IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JULIETTE N. FINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV109 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Juliette N. Finney, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Court has before it the certified administrative record and cross-motions for judgment.[1]

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI benefits on September 6, 2006 alleging a disability onset date of April 10, 2006. (Tr. 12, 106-112, 113-

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

15.)[2] The applications were denied initially and upon reconsideration.  (*Id.* at 53-57, 62-65.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at 66.) Present at the May 20, 2009 hearing were Plaintiff and her attorney.  (*Id.* at 21-48.)  The ALJ determined in his July 1, 2009 decision that Plaintiff was not disabled under the Act.  (*Id.* at 9-20.)  On December 17, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for review.  (*Id.* at 1-5.)

## II. FACTUAL BACKGROUND

Plaintiff was twenty-two years old on the alleged disability onset date, had a high school diploma, was able to communicate in English, and had past relevant work as a shipping clerk.  (*Id.* at 27, 19.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act.  Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.  *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

---

[2] Transcript citations refer to the administrative record.

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain if the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2)     Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

---

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 10, 2006. (Tr. 14.) The ALJ next found in step two that Plaintiff had the following severe impairments: insulin dependent diabetes mellitus, obesity, and an affective disorder *(Id.)* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. *(Id.* at 15.) At the fourth step of the sequence, the ALJ determined that Plaintiff was not disabled from April 10, 2006 through the date of the decision because she could perform her past relevant work as a shipping clerk. *(Id.* at 19-20.)

## B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the evidence. *(Id.* at 17-19.) The ALJ determined that Plaintiff retained the RFC to perform a reduced range of medium work, which is greater than but encompasses the full range of sedentary work. *(Id.* at 17.) Specifically, the ALJ concluded that Plaintiff can lift and carry a maximum of fifty pounds at a time occasionally and can frequently lift and carry twenty-five pounds, can sit for six hours in an eight hour workday, stand for two hours in an eight hour

---

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.,* pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart,* 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris,* 658 F.2d 260, 265 (4th Cir. 1981).

workday, and walk for two hours in an eight hour workday. (*Id.*) Additionally, the ALJ concluded that Plaintiff has non-exertional limitations, which limit her to the performance of non-complex, repetitive and routine tasks in a work environment that does not require any intense ongoing interaction with others. (*Id.*)

## C. Past Relevant Work

The ALJ found in step four that Plaintiff could perform her past relevant work as a shipping clerk as it was actually performed and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (*Id.* at 19-20.)

## V. ANALYSIS

Plaintiff raises a single issue in contending that the ALJ "erred by finding Plaintiff to be not disabled at step four of the sequential evaluation based on an ability to perform past relevant work that exceeds Plaintiff's residual functional capacity." (Docket Entry 10 at 3, 3-8.) "[A] claimant will be found 'not disabled' if [s]he is capable of performing [her] past relevant work either as [s]he performed it in the past *or* as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995); *see* Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *1-2 (1982). Plaintiff has the burden through the first four steps of the sequential evaluation process and at the fourth step she must establish that she has an impairment which prevents her from performing her past relevant work. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

The Social Security Rulings and Regulations also speak to the proper procedure for an ALJ to follow at step four. SSR 82-62 provides in pertinent part that:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, *4 (1982). *See also* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("We use our [RFC] assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . ."). According to SSR 82-62, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, at *3; *see, e.g., Taylor v. Astrue*, Civil Action No. BPG–11–32, 2012 WL 294532, at *9 (D. Md. Jan. 31, 2012) (unpublished); *Floyd v. Astrue*, Civil No. 3:10CV474–FDW–DSC, 2011 WL 4946311, at *4–5 (W.D.N.C. June 6, 2011) (unpublished), *adopted by* 2011 WL 4946270 (W.D.N.C. Oct. 18, 2011) (unpublished); *Shamlee v. Astrue*, Action No. 2:09–cv–290, 2010 WL 3187643, at *5–6 (E.D.Va. May 28, 2010) (unpublished), *adopted by* 2010 WL 3187609 (E.D.Va. Aug. 11, 2010) (unpublished); *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step, the burden of production and proof is on the claimant.").

Here, as noted, after setting forth Plaintiff's RFC for a narrowed range of medium work, the ALJ found in step four that Plaintiff could perform her past relevant work as a shipping clerk as it was actually performed and that this work does not require the

performance of work-related activities precluded by the claimant's residual functional capacity. (Tr. 19-20.) More specifically, the ALJ stated:

> The claimant testified that she worked as a shipping clerk for Harland, the check company. She stated that her duties consisted of inspecting, packaging, and shipping checks to bank customers. She said that the inspection duties required only flipping through the checks to determine whether there were any printing errors, reporting that she was not responsible for comparing the printed information to customers' actual address or bank account number for accuracy. After inspecting the checks, she would tape the boxes shut, affix mailing labels to the boxes, and place them on a conveyor belt for shipping. She stated that the job could be performed in either a seated or a standing position. With regard to her reasons for leaving this job, the claimant explained that she was let go in 2006 after missing two months of work following a surgery on her legs. She acknowledged that she had worked there full-time for a year.
>
> The claimant's testimony demonstrates that this position was unskilled in nature. Consistent with both the information contained in the Dictionary of Occupational Titles and the claimant's testimony, this work activity is classified as requiring a range of light work. The claimant's residual functional capacity permits light work activity with a reduction in the number of hours she can walk or stand in an 8-hour work day. Since the claimant's testimony revealed that her work as a shipping clerk could be performed in either a sitting or standing position, the claimant remains able to perform the range of work activity required in her past relevant work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work the undersigned finds that the claimant is able to perform her past relevant work as it was actually performed.

(Tr. 19-20.)

Thus, the ALJ met the three criteria set forth in SSR 82-62. He rendered a finding of fact as to Plaintiff's RFC, concluding that she could perform a narrowed range of medium work. The ALJ also made a finding of fact as to the physical and mental demands of

8

Plaintiff's past job/occupation as a shipping clerk at a check company, based on her own testimony as to the demands of that job. Finally, the ALJ made a finding of fact that Plaintiff's RFC would permit her return to her past job or occupation. In reaching his step four conclusion, the ALJ evaluated the vocational evidence and rendered a finding that the record evidence does not demonstrate that Plaintiff is precluded from performing work as a shipping clerk as actually performed. (TR. 17-20, 29-32, 136-37, 142-43, 187-89.)

Plaintiff disagrees with this finding. She contests the ALJ's conclusion that her past relevant work is "unskilled." (Docket Entry 10 at 5.) She points in support to hearing testimony in which she stated that her shipping clerk job involved inspecting checks for irregularities. (*Id.* citing Tr. at 30.) Plaintiff asserts these inspections render her past relevant work as "semi-skilled" under 20 C.F.R. 404.1568(b) and that the ALJ's conclusion to the contrary is reversible error.[6]

Having reviewed the entire record, including Plaintiff's hearing testimony, the undersigned concludes that the ALJ's determination that Plaintiff's past relevant work was unskilled in nature is supported by substantial evidence. Unskilled work is:

---

[6] Semi-skilled work is defined as follows:

> [W]ork which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568(b).

work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a), 416.968(a). "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, *4 (1985). At her hearing, Plaintiff testified that she would "inspect [checks] and package them and ship them." (Tr. 30.) The ALJ questioned Plaintiff further on what this inspection entailed and she testified that she did not read checks to determine whether the information on them was correct, but instead looked at the checks to make sure "the print on it was correct, like the lines weren't messed up" and that "there [were] no spots on the checks, or nothing printed on them that shouldn't be there, like a big like ink spot on the check or something." (*Id.* at 30-31.) In light of this, the undersigned is not convinced that the ALJ erred in deeming such work unskilled in nature.

Plaintiff next asserts that the Dictionary of Occupational Titles ("DOT") classifies Plaintiff's past relevant work as semi-skilled. (Docket Entry 10 at 6.) Plaintiff contends that her description at the hearing of her job as a shipping clerk (Tr. 29-32) closely matches the

DOT's description for the job of "Shipping Checker." *See* DOT § 222.687-030.[7] Plaintiff points out that this job is classified as semi-skilled, with a specific vocational preparation time of four, and that the ALJ referred to the DOT, but cited no specific DOT listing to characterize Plaintiff's past work. (*Id.* at 6.) SSR 00-4p, 2000 WL 1898704, *3 (2000) ("The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.")

This objection lacks merit for at least two reasons. First, as Defendant correctly points out, the DOT listing for Checker I also closely matches Plaintiff's description of her past work, which requires only level two education requirements with an SVP of short demonstrations up to and including one month, *i.e.*, an SVP of 2, or essentially unskilled work. (Docket Entry 15 at 9.)[8] However, perhaps more importantly, Plaintiff erroneously

---

[7] The DOT describes "Shipping Checker" as one who:

> Verifies quantity, quality, labeling, and addressing of products and items of merchandise ready for shipment at manufacturing or commercial establishment: Counts, weighs, measures, or examines packaging and contents of items for conformance to company specifications. Affixes postage on packages, using postal meter. Compares items packed with customer's order and other identifying data. May keep records on number of baskets of tobacco sold and removed from auction warehouse and be designated Tobacco-Checkout Clerk (wholesale tr.). May oversee crew of workers engaged in loading and bracing material in railroad cars or trucks.

DICOT, 222.687-030, 1991 WL 672135 (1991).

[8] The DOT describes "Checker I" as one who:

> Verifies quantities, quality, condition, value, and type of articles

11

assumes that the ALJ was required to consult the DOT. As explained, under the fourth step of the disability inquiry, a claimant will be not found disabled if she is capable of performing her past relevant work *either* as she performed it in the past *or* as it is generally required by employers in the national economy. *Pass*, 65 F.3d at 1207 (citing *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) ("The two tests [in SSR 82-61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.")); SSR 82-61. Thus, where, as here, an ALJ finds that an individual is able to "perform [her] job as [s]he did in the past, it is unnecessary to consult the DOT in order to determine whether [the claimant] would be able to perform [her past relevant work] as it currently exists in the national economy." *Pass*, 65 F.3d at 1207. Because there is substantial evidence that Plaintiff can perform her past relevant as she performed it, this assignment of error is meritless.

Plaintiff also implies that the ALJ failed to properly develop the record regarding her past relevant work. In support, Plaintiff points to portions of SSR 82-62 and suggests that the ALJ failed to "obtain sufficient documentation of the functional demands" required by Plaintiff's past relevant work. (Docket Entry 10 at 3.) It is true that the Agency bears a responsibility in developing an adequate record. SSR 82-62, at *3 ("[E]very effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances

---

> purchased, sold, or produced against records or reports. May sort data or items into predetermined sequence or groups. May record items verified. May be designated according to type of establishment as Warehouse Checker (clerical).

DICOT, 222.687-010, 1991 WL 672130 (1991).

permit.") Yet, it must also be remembered that Plaintiff ultimately bears the burden of proving that she was unable to perform her past relevant work. *Hunter*, 993 F.2d at 35; *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983). SSR 82-62 does not alter that burden, and, as noted above, it also explicitly provides that the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62, at *3. *See also Floyd*, 2011 WL 4946311, at *4-5 ("Social Security Ruling 82-62 does not alter [a claimant's] burden"). Here, the ALJ specifically queried Plaintiff's counsel as to the adequacy of the evidentiary record, specifically questioned Plaintiff at length regarding alleged impairments, activities, and capabilities (including her past relevant work), and agreed that the record would remain open so Plaintiff could obtain and submit additional evidence. (Tr. 24-33, 35, 36, 37-38, 42-47.) Plaintiff is also largely silent as to what manner the ALJ should have developed the record further. In light of all this, the undersigned concludes that the ALJ developed the record sufficiently in a manner that permits meaningful judicial review.

Finally, in a Reply to Defendant's Motion for Summary Judgment, Plaintiff argues the evaluation at step four requires the ALJ to evaluate if the Plaintiff "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." (Docket Entry 16 at 4 citing SSR 82-61). Plaintiff then faults the ALJ for failing to make a finding of fact regarding the skill level of Plaintiff's past work as it is generally performed in the national economy. (*Id.* citing Tr. 19-20.) In support of this argument, Plaintiff contends further that the ALJ referenced the

DOT, but failed to cite any specific job listing that corresponds to Plaintiff's past relevant work. (*Id.*) Plaintiff rounds this argument out by further faulting the ALJ for not making a finding as to whether Plaintiff can perform the work as it is generally performed in the national economy. (*Id.*)

This argument lacks merit and largely reasserts a position the undersigned has already rejected. As explained above, SSR 82-61 is written disjunctively and contain two tests. One test, which the ALJ did not adopt here, requires the ALJ to consider "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the economy" and to this end the DOT "can be relied upon . . . to define the job as it is *usually* performed in the national economy." SSR 82-61, at *2. The second test, which the ALJ did employ here, led the ALJ to consider "the functional demands and job duties of a particular past relevant job as he or she actually performed it." (*Id.*) Given that the ALJ evaluated the actual functional demands and job duties of Plaintiff's past relevant work, he was not also obliged to assess the functional demands and job duties of that job as required by employers throughout the national economy. "[A] claimant will be found 'not disabled' if [she] is capable of performing [her] past relevant work either as [she] performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d.at 1205 (citing *Martin*, 901 F.2d at 653, for the statement that "The two tests [in SSR 82-61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.").

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the

Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 9) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
January 17, 2014